E-FILED
Friday, 13 January, 2023 04:14:17 PM
Clerk, U.S. District Court, ILCD

AO 91 (Rev. 11/11) Criminal Complaint

FILED
JAN 13 2023
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

United States of America
v.

TODD M. ENGLAND

*Defendant(s)*

Case No. 23-MJ-3008

SEALED

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of 11/30/21 to 2/3/22 in the county of Christian in the Central District of Illinois, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2252A | Receipt and Possession of Child Pornography |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

s/Mike Mitchell
*Complainant's signature*

Special Agent Mike Mitchell - DHS/HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 01/13/2023

s/Karen L McNaught
*Judge's signature*

City and state: Springfield, IL

Karen L. McNaught, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Michael F. Mitchell, being first duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI), and I am currently assigned to the Resident Agent in Charge in Springfield, Illinois. I have been employed as a Special Agent for over 20 years. As part of my daily duties as an HSI Special Agent, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A. I have received training in the area of child pornography/child exploitation and computer forensics having had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in various forms of media including computer media. I have been the Affiant of and participated in the execution of numerous arrest and search warrants which involved child exploitation and/or child pornography offenses.

2. This affidavit is made in support of a criminal complaint charging Todd ENGLAND with receipt and possession of child pornography, in violation of 18 U.S.C. § 2252A. A warrant for the arrest of ENGLAND is requested.

3. I am familiar with the information contained in this Affidavit based upon the investigation I have assisted in and based on my conversations with other law enforcement officers involved in this investigation.

4. Because this Affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that ENGLAND committed child pornography offenses in violation of 18 U.S.C. § 2252A. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

5. The investigation has revealed that beginning on or around November 30, 2021, through February 3, 2022, ENGLAND did possess and receive child pornography by using an electronic device that was connected to the internet.

**PEER TO PEER NETWORKS**

6. Peer-to-peer (P2P) file sharing is a method of transferring digital files directly between individual users. To participate in the trading of digital files, a user can simply download computer software which is associated with a specific P2P file sharing network. There are multiple types of P2P file sharing networks on the Internet, including Gnutella, e-Donkey, ARES and BitTorrent to name a few. P2P file sharing software allows groups of computers using the same file sharing network to transfer digital files from one computer to another while connected to a network, usually the Internet.

7. To connect to a particular P2P file sharing network, a user first obtains a P2P client software program, which can be downloaded from the Internet. Each P2P file sharing network may have many different P2P client software programs that allow access to that particular P2P file sharing network. For example, uTorrent and Vuze are

two different software programs which both access the BitTorrent network. These P2P client software programs share common protocols for network access and file sharing.

8. In general, P2P client software allows the user to set up file(s) on a computer to be shared on a P2P file sharing network with other users running compatible P2P client software on the same network. A user can download files by opening the P2P client software on the user's computer and selecting files that are of interest and currently being shared on a P2P file sharing network.

9. Your affiant is aware that P2P file sharing networks, including BitTorrent and Shareaza, are frequently used to trade digital files of child pornography. These files include both image and movie files.

**BITTORRENT**

10. The BitTorrent network is a very popular and publicly available P2P file sharing network. BitTorrent works through three main parts: ".torrent files", "trackers" and "clients". Most computers that are part of this network are referred to as "peers". The terms "peers" and "clients" can be used interchangeably when referring to the BitTorrent network. A user can simultaneously disseminate files (or parts of files) to certain peers while simultaneously downloading files (or parts of files) from other peers.

11. The BitTorrent network can be accessed by computers running many different client programs, some of which include uTorrent and Vuze. These client programs are publicly available and can be downloaded from the Internet. These BitTorrent client programs share common protocols for network access and file sharing.

The user interface, features, and configuration may vary between clients and versions of the same client.

12. During the installation of typical BitTorrent network software, various settings are established which configure the host computer to share files. Typically, a setting establishes the location of one or more directories or folders whose contents (files) may be made available to other BitTorrent network users to download.

**TORRENTS**

13. In order to share a file or a set of files on the BitTorrent network, a "Torrent" file needs to be created by the user that initially wants to share the file or set of files. A "Torrent" can be associated with a single file or with many files. A "Torrent" is a small data file that includes the names of the file(s) that are being shared and may include information on how to locate other users on the BitTorrent network who are sharing those files or parts of those files. It is important to note that the "Torrent" file itself does not contain the actual file(s) being shared but contains information about the file(s) described in the "Torrent", such as the name(s) of the file(s) being shared and the "info hash" of the "Torrent". The "info hash" is a SHA-1 hash value of the set of data describing the file(s) referenced in the "Torrent", which include the SHA-1 hash value of each file piece, the file size, and the file name(s). The "info hash" of each "Torrent" uniquely identifies the "Torrent" file on the BitTorrent network.

14. The "Torrent" file may also contain information on how to locate other peers who are sharing the file(s) referenced in the "Torrent" by identifying "Trackers". A "Tracker" is a computer that keeps track of peers on the network who may be sharing

part, or all of the file(s) associated with the "Torrent". This information includes the Internet Protocol (IP) addresses of other peers which are sharing the file(s) or parts of the file(s). The "Tracker" will then convey information back to the user/requester to help that user identify other peers on the network who are sharing the files or parts of the files associated with that Torrent.

15. It is important to note that, like the "Torrent" files themselves, the "Trackers" do not actually host the file(s) being shared but are used to locate other peers that have the entire file(s) or at least a portion of the file(s) available for sharing. It should also be noted that the use of "Tracker(s)" on the BitTorrent network is not always necessary to locate peers/clients that have file(s) being shared from a particular "Torrent" file. There are many publicly available servers on the Internet that provide BitTorrent tracker services.

**LOCATING TORRENTS**

16. Once a "Torrent" is created, the user who created the "Torrent" will typically make the "Torrent" available to other users so that other users can download and share the files associated with the "Torrent." The "Torrent" can be uploaded to a website which hosts torrents or can be transmitted directly to other users via e-mail, instant message or other methods. This is done so that other users can download and share the file(s) referenced in the "Torrent" file.

17. In order to locate "Torrent" files of interest, a user can use keyword searches within the BitTorrent network client itself or on websites hosting "Torrents".

Once a "Torrent" file is located that meets the keyword search criteria, the user can download the "Torrent" file to their computer.

**DOWNLOADING FILES USING BITTORRENT**

18. Once a user downloads a "Torrent" file, the users' BitTorrent software will then process that "Torrent" in order to find "Trackers" or utilize other means that will help locating peers on the network that have all or part of the file(s) referenced in the "Torrent." The user then selects the file(s) they want to download that were referenced in the torrent file. A user can download some or all of the files associated with the "Torrent." The selected files are then downloaded to the users' computer directly from other peers on the network who are sharing the same files or parts of the files.

19. Typically, once the BitTorrent network client has downloaded part of a file(s), it may immediately begin sharing the file with other users on the network. The BitTorrent network client program succeeds in reassembling the file(s) from different sources only if it receives "pieces" with the exact SHA-1 piece hash described in the torrent file. During the download process, a typical BitTorrent client program displays the Internet Protocol address of the peers that appear to be sharing part or all of the file(s) referenced in the "Torrent" file or other methods utilized by the BitTorrent network protocols. The downloaded file is then stored in the area previously designated by the user and/or the client program. The downloaded file(s), including the torrent file, will remain until moved or deleted.

20. A "client" is a computer program supporting the BitTorrent protocol, able to communicate with trackers, upload and download data and create downloads from

the information contained in .torrent files. An example for such a client program is "Shareaza".

## INVESTIGATION OF CHILD PORNOGRAPHY TRADING ON BITTORRENT

21. One method for an investigator to search the BitTorrent network for users possessing and/or disseminating child pornography files is to search for "Torrents" whose name contains terms that would be associated with child pornography files. The investigator would then download the file(s) associated with the "Torrent" and determine if the file(s) are in fact child pornography. If so, the investigator can document the "info hash" SHA-1 hash value of this "Torrent" file, for use in a subsequent investigation.

22. Although transparent to the typical user, when searches are conducted, trackers return results of additional peers who recently reported to the tracker that they have that file(s) in whole or in part. This information may include the IP addresses of those other peers. This information can be documented by investigators and compared to "info hash" SHA-1 hash values the investigator has obtained in the past and believes to be child pornography. This allows for the detection and investigation of computers involved in possessing, receiving, and/or distributing files of previously identified child pornography. Therefore, without even downloading the file, the investigator can compare the "info hash" SHA-1 hash value and determine with mathematical certainty that a file(s) seen on the network is an identical copy of a child pornography file(s) they had seen before.

23. The returned list of IP addresses can include computers that are likely to be within the investigator's jurisdiction. The ability to identify the approximate location of these IP addresses is provided by IP geographic mapping services, which are publicly available and also used for marketing and fraud detection. At this point in the investigative process, an association between a known "Torrent" file (based upon on the "info hash" SHA-1 hash value comparison) and a computer having a specific IP address (likely to be located within a specific region) can be established.

24. Once a client user is identified as recently having a file(s) believed to be child pornography, in whole or in part, the investigator can then query that client user directly to confirm the client user has that file(s), in whole or in part, and/or download that file directly from the client user exclusively, otherwise known as a single source download. Depending upon several factors, including configuration and available resources, it might not be possible to do either. The process of sharing files on the BitTorrent network involves peers allowing other peers to copy a file(s) or portions of a file(s). This sharing process does not remove the file(s) from the computer sharing the file. This process places a copy of the file on the computer which downloaded it.

25. If an investigator either received an affirmative response from a remote peer that they possess a digital file, or the investigator received a digital file, in whole or in part, that is believed to contain child pornography, from a remote peer at a specific IP address, the investigator can conclude that a computer, likely to be in this jurisdiction, is running a BitTorrent network P2P client and is currently possessing, receiving, and/or distributing specific and known visual depictions of child pornography.

26. Law Enforcement has created BitTorrent network client programs that obtain information from "Trackers" about peers/clients recently reporting that they are involved in sharing digital files of known actual child pornography (based on the "info hash" SHA-1 hash value), which then allows the downloading of a file from a single IP address (as opposed to obtaining the file from multiple peers/clients on the network). This procedure allows for the detection and investigation of those computers involved in sharing digital files of known actual child pornography on the BitTorrent network.

27. During the query and/or downloading process from a remote BitTorrent network client, certain information may be exchanged between the investigator's client and the remote user they are querying and/or downloading a file from. This information can include 1) the remote client's IP address; 2) a confirmation from the remote client that they have pieces of the file(s) being requested, in whole or in part, and that the pieces of the file(s) are being reported as shared from the remote client program; and 3) the remote client program and version. This information may remain on the remote client's computer system for long periods of time. The investigator has the ability to log this information. A search can later be conducted on a seized computer system(s) for this information, which may provide further evidence that the investigator's client communicated with the remote client.

28. The investigation of P2P file sharing networks is a cooperative effort of law enforcement agencies around the country. Many of these agencies are associated with the Internet Crimes Against Children Task Forces. P2P investigative methodology has led to the issuance and execution of search warrants around the country resulting in

the arrest and conviction of numerous offenders possessing and/or distributing child pornography, some of which were also involved in the sexual exploitation of actual child victims.

**PROBABLE CAUSE**
**MARCH 2019**

29. In March 2019, Taylorville (IL) Police Department Officer Christian Nelson was contacted by the Naperville Police Department (PD) regarding a peer-to-peer software investigation involving the possession and distribution of child pornography. An individual using a version of BitTorrent software was observed to be in possession of, and distributing child pornography on January 25, 2018, from an IP address which traced back to the area of Taylorville, IL. The description of events in paragraphs 29-37 of this Affidavit document Off. Nelson's investigative activity concerning P2P distribution of child pornography coming from IP address 72.9.123.248.

30. Officer Nelson reviewed the evidence provided by Naperville PD and found that the Naperville PD was able to establish a direct connection to the suspect computer device, located at IP address 72.9.123.248, on the BitTorrent network. The connection time occurred at 10:56:57 AM CST on January 25th, 2018, at which time the suspect computer reported that it had a Torrent file known by its Secure Hash Algorithm-1 (SHA-1) hash value of "8ca4cea13a95d2d320beea8adcc0389c82512f95". The suspect computer reported that it had 138 complete files of the reported 192 total files associated with the torrent. The computer acknowledged it had only pieces of the remaining 54 files.

31. This particular hash value, "8ca4cea13a95d2d320beea8adcc0389c82512f95", is known by the law enforcement community to contain files of known child pornography, as identified by law enforcement agencies across the country and around the world in previous investigations. Officer Nelson reviewed the images and videos as obtained directly from the suspect computer regarding this torrent file and confirmed that several images and videos in the download met the definition of child pornography in Illinois as defined in ILCS 720-5/11-20.1.

32. One of the files contained within the suspect torrent file is a video labeled "kati_erb AKA give me more.avi" and is a 3 minute .avi video file depicting a small-framed female under the age of 18 engaged in masturbation. The female is observed to be wearing a multi-colored skirt and is exposed from the waist down during the sexual act.

33. Located within the same torrent file was a folder labeled "Mariaaa". This folder contained 3 sperate .avi files of three small-framed females who appear to be under the age of 18. The females appear to be using a webcam and are seen lifting their shirts and exposing their breasts. The female in video three, observed to be wearing a blue bottom and white top shirt, is found to be wearing orthodontic braces. The female observed in video Mariaaa02 wearing a blue shirt is also observed to be wearing orthodontic braces.

34. The investigative software conducted what is known as a "single source download" of the torrent from the suspect computer. All pieces of the torrent obtained from the suspect computer came from the computer located at IP address 72.9.123.248,

and no other computer contributed pieces of the files during the download of this torrent during this session.

35. Through the issuance of legal process documents, Officer Nelson determined that IP address 72.9.123.248 on January 25, 2018, at 10:56:57 AM CST, was assigned to Jody Hodson at 1027 S. Cheney Street in Taylorville, IL. Officer Nelson determined that the property owner at 1027 S. Cheney Street was Todd M. ENGLAND. A vehicle with an Illinois registration belonging to ENGLAND was observed at the residence on March 16, 2019.

36. On April 1, 2019, Officer Nelson obtained a State of Illinois search warrant for the residence at 1027 S. Cheney Street in Taylorville, IL. On April 3, 2019, Officer Nelson and other law enforcement officers executed the search warrant at 1027 S. Cheney Street. Todd ENGLAND was encountered at the residence, and he agreed to accompany the offers to the Taylorville PD for a voluntary interview. Prior to departing the residence, ENGLAND was advised of his Miranda rights. He said that he understood and was still willing to consent to a voluntary interview.

37. An audio and video recorded interview was conducted. During the interview ENGLAND made the following admissions. He had been using file sharing software for approximately 10 years and that he had downloaded what he believed to be child pornography. He acknowledged that a forensic examination of his electronic devices at the residence would probably show evidence of child pornography. ENGLAND stated that when he downloaded files from the file sharing software, some of the folders contained images he believed to be child pornography. He stated that

while he deleted some of the files he believed to be child pornography, he did not delete all of them.

38. The forensic examination of electronic items seized from ENGLAND's residence identified video files from the Mariaaa video series, which had been observed in the download from the Naperville PD. Additional images of juvenile children in various states of exhibition and sexual acts were discovered.

39. On April 3, 2019, ENGLAND was arrested and charged with violations of Illinois law concerning possession, distribution, and reproduction of child pornography.

40. On October 2, 2019, the Grand Jury in the Central District of Illinois returned an Indictment against Todd ENGLAND, charging him with Receipt and Possession of Child Pornography, in violation of 18 USC § 2252A. On October 8, 2019, the Christian County State's Attorney dropped all charges against ENGLAND.

41. On October 28, 2019, ENGLAND was arraigned in U.S. District Court in Springfield, IL. He entered a plea of not guilty to both counts of the Indictment. ENGLAND was released on conditions.

42. On April 1, 2021, pursuant to a written plea agreement, ENGLAND pleaded guilty to Possession of Child Pornography.

43. On October 1, 2021, ENGLAND was sentenced to a term of 3 years of Probation on the charge of Possession of Child Pornography. The charge of Receipt of Child Pornography was dismissed. The court imposed the mandatory and discretionary supervised release conditions.

**NOVEMBER 2021**

44. On November 30, 2021, just two months into ENGLAND's term of probation, Sgt. Christian Nelson (previously referred to as Off. Christian Nelson) was conducting a proactive investigation into the distribution of child pornography via the internet. Using investigative software designed to covertly investigate the distribution of child pornography via the Peer-to-Peer (P2P) network BitTorrent, Sgt. Nelson observed an IPv4 address, specifically 72.9.124.53, connect to his investigative machine numerous times over the course of several weeks and begin to distribute data known to comprise child pornography. The description of events in paragraphs 44-74 of this Affidavit document Sgt. Nelson's investigative activity concerning P2P distribution of child pornography coming from IP address 72.9.124.53.

45. The following times are listed in Greenwich Mean Time. In the month of December in North America, an example conversion of 11:00:00 GMT would equate to 05:00:00 CST (Central Standard Time) (GMT-6).

46. On December 4, 2021, at approximately 11:30:40 (GMT -6:00) the Investigative Machine running Torrential Downpour version 1.47 connected to a remote client located at IPv4 address 72.9.124.53 relating to a file transfer of suspected child pornography. The file in question was identified by its torrent info hash value of "c0d5dc60ccb23962ac92bb2413329e3c204b8ff1" and the title of said file was listed as "Young Video Models - N28 - Nadia 14yo (60m) (youngvideomodels yvm).avi".

47. This torrent file hash is known by the greater law enforcement community and the National Center for Missing and Exploited Children (NCMEC) to be a known

file of child pornography uniquely identified by a SHA-1 (Secure Hash Algorithm - 1) hash value of F7692A363E8B822472AAC62A385C882D2E633EB3. It has been identified by the aforementioned communities as involving a child in underwear with genitalia exposed.

48. The Investigative Machine connected with suspect IPv4 address 72.9.124.53 at 11:30:40 (GMT -6:00) and began the download process. The remote client was identified as running the Bit-Torrent program Shareaza, version 2.7.10.2, and the remote client indicated that the user would possess 2367 pieces of the 2374 pieces that encompassed the full torrent file, identified as 1 video file. The total file size was listed as 1,244,205,056 bytes (1.244Gb) of data.

49. Sgt. Nelson conducted research into Shareaza, and observed on their company website, located at shareaza.sourceforge.net, the following description of their product: "Shareaza is a peer-to-peer client for Windows that allows you to download any file-type found on several popular P2P networks. Shareaza is FREE & contains NO Spyware or third-party products. Shareaza can connect to up to 4 separate Peer-to-Peer networks, providing access to hundreds of thousands of diverse users, all from one single program. You can down-load/upload from these networks: EDonkey2000, Gnutella, BitTorrent and Gnutella2 (G2)."

50. The Investigative Machine was able to download piece numbers 213, 1072, 1079, 1381, 1913, 2327, and 2371 from the remote client. Of the 1,244,205,056 bytes (1.244Gb) of data the remote client possessed, the Investigative Machine was able to obtain 3,670,016 bytes (0.0036 Gb) of data before the remote client closed the connection

at 13:37:06 (GMT -06:00). The remote client indicated that at the time of connection termination, it had not acquired all of the pieces required to assemble the complete file. The remote client then indicated that it terminated the connection 4 successive times without completing the client handshake after obtaining the aforementioned file pieces. Total investigative time was listed as approximately 2 hours, 6 minutes, and 26 seconds.

51. On December 7, 2021, at approximately 11:30:40 (GMT -06:00), the Investigative Machine running Torrential Downpour version 1.47 connected to a remote client located at IPv4 address 72.9.124.53 relating to a file transfer of suspected child pornography. The file in question was identified by its torrent info hash value of "dceecff5d2891eed7b18bb0eef585fb3290c7120" and the title of said file was listed as "[JulyJailbait]- Fuck my girl like adult pthc.mp4".

52. The acronym "PTHC" stands for "Pre-Teen Hardcore" and is a search term known to the greater law enforcement community to be used to aid in the search of files that contain images of child pornography.

53. This torrent file hash is known by the greater law enforcement community and the National Center for Missing and Exploited Children (NCMEC) to be a known file of child pornography uniquely identified by a SHA-1 hash value of D2CFD7B73A07AD871C014AB5562984A0E095F375. It has been identified by the aforementioned communities as involving a young female child who is subjected to sexual intercourse with an adult male involving both oral and vaginal penetration of the juvenile female.

54. The Investigative Machine connected with suspect IPv4 address 72.9.124.53 at 11:30:28 (GMT -6:00) and began the download process. The remote client was identified as running the Bit-Torrent program Shareaza, version 2.7.10.2, and the remote client indicated that the user would possess 543 pieces of the 952 pieces that encompassed the full torrent file, identified as 1 video file. The total file size was listed as 124,684,910 bytes (0.124 Gb) of data.

55. The Investigative Machine was able to download piece numbers 490 and 675 from the remote client. Of the 124,684,910 bytes (0.124 Gb) of data the remote client possessed, the Investigative Machine was able to obtain 262,144 bytes (0.00026 Gb) of data before the remote client closed the connection at 11:48:45 (GMT -6:00). The remote client indicated that at the time of connection termination, it had not acquired all of the pieces required to assemble the complete file. The remote client then indicated that it terminated the connection 4 successive times without completing the client handshake after obtaining the aforementioned file pieces. Total investigative time was listed as approximately 18 minutes and 17 seconds.

56. On December 14, 2021, at approximately 10:24:17 (GMT -6:00), the Investigative Machine running Torrential Downpour version 1.47 connected to a remote client located at IPv4 address 72.9.124.53 in regard to a file transfer of suspected child pornography. The file in question was identified by its torrent info hash value of "fbe973d4d6e78d4024b22c275a5a3b8cc26338b3" and the title of said file was listed as "[JulyJailbait] - [jjclubumn7vkhyuw.onion] - fingering little girl ass (fetish, copro, amateur, pthc, anal).mp4".

57.     This torrent file hash is known by the greater law enforcement community
and the National Center for Missing and Exploited Children (NCMEC) to be a known
file of child pornography uniquely identified by a SHA-1 hash value of
F56699AA8D1998E88D9A5FF83B23EAA112BDB20D. It has been identified by the
aforementioned communities as involving a young female, roughly estimated to be
around the age of 6 years old, subjected to anal penetration by an adult's finger.

58.     The Investigative Machine connected with suspect IPv4 address
72.9.124.53 at 10:24:17 (GMT -6:00) and began the download process. The remote client
was identified as running the Bit-Torrent program Shareaza, version 2.7.10.2, and the
remote client indicated that the user would possess 660 pieces of the 664 pieces that
encompassed the full torrent file, identified as 1 video file. The total file size was listed
as 86,977,185 bytes (0.086 Gb) of data.

59.     The Investigative Machine was able to download piece numbers 1, 3, 18,
21, 48, 56, 67, 89, 111, 203, 545, 648 from the remote client. Of the 86,977,185 bytes (0.086
Gb) of data the remote client possessed, the Investigative Machine was able to obtain
1,572,864 bytes (0.00157 Gb) of data before the remote client closed the connection at
10:52:07 GMT (-06:00). The remote client indicated that at the time of connection
termination, it had not acquired all of the pieces required to assemble the complete file.
The remote client then indicated that it terminated the connection 4 successive times
without completing the client handshake after obtaining the aforementioned file pieces.
Total investigative time was listed as approximately 27 minutes, and 50 seconds.

60. On December 13, 2021, Sgt. Nelson conducted research with the American Registry of Internet Numbers (ARIN) into the IPv4 address of 72.9.124.53 after obtaining three partial downloads of child pornography from the aforementioned address. ARIN returned that the IPv4 address was listed as being assigned to Computer Techniques, Inc. (CTI) in Taylorville, Illinois.

61. On December 14, 2021, Sgt. Nelson consulted with the Christian County State's Attorney's office regarding the issuance of an administrative subpoena duces tecum to CTI for the IPv4 Address of 72.9.124.53 between the dates of December 1, 2021, and December 13, 2021. The administrative subpoena duces tecum was issued pursuant to Illinois State statute 725 ILCS 5/115-17b. The Christian County State's Attorney approved the issuance of the subpoena, and the Christian County Circuit Clerk assigned case number 2021MR194 to the document.

62. After receiving the document, Sgt. Nelson served the subpoena duces tecum 2021MR194 on a CTI official.

63. On January 4, 2022, at approximately 11:28:43 (GMT -6:00) the Investigative Machine running Torrential Downpour version 1.47 connected to a remote client located at IPv4 address 72.9.124.53 relating to a file transfer of suspected child pornography. The file in question was identified by its torrent info hash value of "925351373f2d45a02f3c5a05bfb44c998941dbe1" and the title of said file was listed as "(R@Ygold)(Hussyfan)(Pthc) Hc d38 Shots 9~12Yo Blond Isabel Preteen Young Russian Girl Rape Snuff.avi".

64. This torrent file hash is known by the greater law enforcement community and the NCMEC to be a known file of child pornography uniquely identified by a SHA-1 hash value of CCBF92EBC8CB0B18A5CB527D5BD25A2563037692. It has been identified by the aforementioned communities as involving a young female engaged in sexual acts with other juveniles.

65. The Investigative Machine connected with suspect IPv4 address 72.9.124.53 at 11:28:45 (GMT -6:00) and began the download process. The remote client was identified as running the Bit-Torrent program Shareaza, version 2.7.10.2, and the remote client indicated that the user would possess 1106 pieces of the 1106 pieces that encompassed the full torrent file, identified as 1 video file. The remote client stated that it possessed all parts of the video file. The total file size was listed as 289,681,408 bytes (0.289 Gb) of data.

66. The Investigative Machine was able to download piece numbers 1, 17, 19, 24, 26, 29, 34, 39, 42, 49, 109, 112, 145, 164, 354, 363, and 1104 from the remote client. Of the 289,681,408 bytes (0.289 Gb) of data the remote client possessed, the Investigative Machine was able to obtain 4,456,448 bytes (0.004 Gb) of data before the remote client closed the connection at 10:52:07 (GMT -6:00). The remote client indicated that at the time of connection termination, it had not acquired all of the pieces required to assemble the complete file. The remote client then indicated that it terminated the connection 4 successive times without completing the client handshake after obtaining the aforementioned file pieces. Total investigative time was listed as approximately 21

hours, 33 minutes, and 49 seconds. The total active download time was approximately 29 minutes and 10 seconds.

67. On January 11, 2022, at approximately 11:50:18 (GMT -6:00), the Investigative Machine running Torrential Downpour version 1.47 connected to a remote client located at IPv4 address 72.9.124.53 relating to a file transfer of suspected child pornography. The file in question was identified by its torrent info hash value of "143c4d5d8ba128cb054d048587bfb5cf814e3ab1" and the title of said file was listed as "julyjailbait - latin pedwoman and boy suck, fuck, tramplinf, fetish (pthc, preteen, slave, pe-domom).mp4".

68. This torrent file hash is known by the greater law enforcement community and the NCMEC to be a known file of child pornography uniquely identified by a SHA-1 hash value of D6577C6F4B0D19DA70EC89329A17D0609F99316A. It has been identified by the aforementioned communities as involving a juvenile engaged in sexual acts with an adult female.

69. The Investigative Machine connected with suspect IPv4 address 72.9.124.53 at 11:50:21 (GMT -6:00) and began the download process. The remote client was identified as running the Bit-Torrent program Shareaza, version 2.7.10.2, and the remote client indicated that the user would possess 1 piece of the 529 pieces that encompassed the full torrent file, identified as 1 video file. The total file size was listed as 69,330,129 bytes (0.069 Gb) of data.

70. The Investigative Machine was unable to download a full piece number from the remote client as only Piece number 0 [Zero] was obtained by the investigative

machine. Piece 0 [Zero] is identified as the blueprint piece used by the torrent program to coordinate the download of the full file. Of the 69,330,129 bytes (0.069 Gb) of data the remote client possessed, the Investigative Machine was able to obtain 131,072 bytes (0.00013 Gb) of data before the remote client closed the connection at 12:08:57 GMT (-06:00). The remote client indicated that at the time of connection termination, it had not acquired all of the pieces required to assemble the complete file. The remote client then indicated that it terminated the connection 4 successive times without completing the client handshake after obtaining the aforementioned file piece. Total investigative time was listed as approximately 18 minutes, and 36 seconds. It is unknown if the remote client acquired any pieces of this file since the download window was closed.

71. On January 25, 2022, the Christian County State's Attorney's office provided Sgt. Nelson with the results of 2021MR194. The customer assigned to IPv4 address by CTI was identified as Todd M. ENGLAND, located at 1027 S. Cheney Street in Taylorville. Service for ENGLAND using this IPv4 address had been active in his name since October 14, 2019. Sgt. Nelson confirmed that wireless service was present on the account, and the wireless network was password secured using wpsk/wpsk2 measures.

72. In November 2021, the Taylorville Police Department received notification from U.S. Probation regarding ENGLAND's conviction in Federal Court concerning the Federal offense of Activities Relating to Material Constituting or Containing Child Pornography, 18 U.S. Code § 2252A. ENGLAND's address as registered with U.S. Probation was 1027 S. Cheney Street, Taylorville. IL.

73. Sgt. Nelson consulted old case files regarding ENGLAND, specifically Taylorville Police Department case number C19-0003365, and observed that in 2019, ENGLAND was identified as having used Shareaza version 2.7.10.2 (Latest version since September 18, 2017) to conduct downloads and uploads of files identified as child sexual exploitation materials.

74. Sgt. Nelson spoke with ENGLAND's Probation Officer (PO), Michelle Cyrus, and learned that pursuant to ENGLAND's conditions of Probation, he was not allowed to have access to technology or internet service without Probation's consent. PO Cyrus indicated that ENGLAND was not to have internet access through CTI as U.S. Probation did not approve such access.

**EXECUTION OF SEARCH WARRANT AT ENGLAND'S RESIDENCE**

75. On February 1, 2022, Sgt. Nelson obtained a state issued search warrant for Todd ENGLAND's residence at 1027 S. Cheney Street, Taylorville, IL. On February 3, 2022, at approximately 8:56 am, officers from the Taylorville Police Department, assisted by HSI RAC Eric Bowers and HSI SA Keith Nothom, executed the state issued search warrant at 1027 S. Cheney Street, Taylorville, IL.

76. After a delayed response, ENGLAND opened the front door of the residence. Officers advised him that a search warrant was being executed and that he was going to be temporarily detained in handcuffs. The residence was secured by the officers and then a search of the premises was conducted.

77. RAC Bowers and TPD Detective Christopher Adams conducted an audio recorded interview with ENGLAND in a living room at the residence. ENGLAND's

handcuffs were removed. ENGLAND was advised that the interview was being audio recorded. RAC Bowers read the DHS Statement of Rights form to ENGLAND. ENGLAND stated that he understood his rights and was willing to waive his rights to speak with the agents. ENGLAND signed the consent form, as witnessed by RAC Bowers and Det. Adams.

78. The following information was provided by ENGLAND during the interview. ENGLAND has lived at the residence for approximately 6 years. His ex-girlfriend, Jodie Hodson, moved out of the residence about 3 years ago and he hasn't had anyone living with him since then. ENGLAND has had internet service at the residence, provided by CTI, for about 6 years. The internet service is in his name, and he rents the computer modem from CTI. He said his internet is locked down with a password (doxiedad1973) and that he doesn't share his password or his internet service with anyone.

79. Officers located an iPad and an iPhone in ENGLAND's bedroom. ENGLAND identified these devices as belonging to him. He stated that the iPhone had a phone number of 217-823-1788 and he'd bought this device new and had it for about one year. ENGLAND said that the iPad had belonged to his ex-girlfriend but that she had given him the devices when she left about 3 years ago. He said that he uses this device occasionally for Facebook and to visit adult porn sites. He said he most recently used the iPad a few days ago. ENGLAND identified his email address associated with his Facebook account as udokeir73@yahoo.com.

80. In addition to the iPad and iPhone, officers also located an old flip phone (which was not internet capable). ENGLAND stated that U.S. Probation was not aware that he had an iPad and an iPhone, as he was not permitted to possess any internet capable device that wasn't monitored by U.S. Probation. In ENGLAND's bedroom, officers also located a power cord for an HP laptop. When questioned by Resident Agent in Charge (RAC) Bowers, ENGLAND denied currently having a laptop. He said that this cord was from an old laptop and that he kept it because he may, in the future, acquire another laptop.

81. RAC Bowers explained that officers had evidence to show that Shareaza had been used from an electronic device at this residence since November 2021. ENGLAND said that he had used Shareaza before his first arrest but that he hadn't used it since then, and that it wasn't present on any device at his residence. ENGLAND also stated that there wouldn't be any child exploitation material found on any device at his residence.

82. At ENGLAND's request, RAC Bowers placed a phone call to PO Cyrus so that ENGLAND could explain his interaction with law enforcement. The call between PO Cyrus and ENGLAND was on speakerphone, and both parties were aware. ENGLAND confirmed to PO Cyrus that he was in possession of an iPad and an iPhone. ENGLAND confirmed that U.S. Probation had not authorized and was not aware of that he possessed those internet capable devices. ENGLAND acknowledged that one of his conditions of probation was that all internet capable devices were to be monitored by U.S. Probation, and he acknowledged that the iPad and iPhone were not being

monitored. PO Cyrus explained that these violations would have to be addressed with the Court.

83. In an attempt to locate a laptop or other electronic devices, RAC Bowers asked the officers to again search the residence. In the garage, SA Keith Nothom moved a portable cooler and observed a red and black HP laptop, which was placed inconspicuously between the cooler and the wall. The item was photographed in place and then secured as evidence. SA Nothom also located a red and black SanDisk thumb drive in close proximity to the concealed laptop.

84. RAC Bowers turned on the portable audio recorder and brought the laptop and thumb drive into the kitchen where ENGLAND was sitting. RAC Bowers explained that these items had been found concealed in the garage. ENGLAND admitted that this was his laptop, which he said was given to him by his sister some time ago. ENGLAND said that he didn't bring this device into the house, and that he only used it for his iTunes music collection. RAC Bowers asked if Shareaza was installed on the laptop and initially ENGLAND said no, but then he said he wasn't sure. RAC Bowers asked for the laptop's password and ENGLAND said it was 8440. RAC Bowers entered the password into the laptop to make sure the password was correct. The laptop opened to the computer desktop, and RAC Bowers observed the icon for the Shareaza peer-to-peer program on the desktop. The computer was then powered off. ENGLAND insisted that he didn't use Shareaza to download child pornography, and that there wouldn't be any child pornography found on the device.

85. At approximately 11:00 am, ENGLAND was transported to the Taylorville Police Department. At approximately 2:00 pm, Det. Adams asked ENGLAND if he would be willing to grant his consent for law enforcement to examine the items that had been seized from his residence, and ENGLAND agreed. ENGLAND signed a written consent form, as witnessed by Det. Adams.

86. Some items that were seized from ENGLAND's residence were transported by RAC Bowers to the Illinois Attorney General's Office for forensic examination.

**ILLINOIS ATTORNEY GENERAL'S REPORT OF FORENSIC EXAMINATION**

87. On February 16, 2022, RAC Bowers was provided a copy of the forensic examination report prepared by Illinois Attorney General's Office's forensic examiner. The report documented the forensic examination of items seized from ENGLAND's residence on February 3, 2022. Below are details provided in the report.

88. The examination of the HP laptop that was found concealed in the garage (see paragraph 83) showed that the "Owner" was listed as udokeir73@yahoo.com. The "User Name" was shown as "udoke" and the "Full Name" was shown as "Todd ENGLAND".

89. A peer-to-peer file sharing program known as Shareaza was installed. The following information contains the installed version of the software and installation details. The "Application Name" was shown as Shareaza 2.7.10.2 and the last updated date/time was shown as February 2, 2022, at 10:57:44 am CST. The "Shareaza Complete Path" was shown as C:\Users\udoke\Downloads. This is the location that the user has

designated where files that are downloaded from Shareaza are stored when the full file download has been completed.

90. Microsoft Windows Prefetch files are created when an application is launched. The following Prefetch artifacts related to the Shareaza application. For the executable file "SHAREAZA.EXE", the artifacts show that this application has been run 80 times. The last run is shown as February 2, 2022, at 10:57:44 CST.

91. The forensic examiner located child pornography on the two devices when he was conducting computer forensics.

92. On October 18, 2022, your affiant retrieved the evidence from the Illinois Attorney Generals Office to conduct additional forensics on the media. In addition to the physical evidence, the forensic examiner provided your affiant forensic images of the hard drive from the Toshiba Laptop and Thumb drive that had been located in the garage (See paragraph 83). The forensic examiner had previewed the other devices but had not made forensics images of them.

93. Your affiant confirmed the findings of the forensic examiner and conducted further analysis.

94. Your affiant located and documented two GUID's (Globally Unique Identifier) from Shareaza that were located on ENGLAND's computer. The first GUID was located in allocated Space, "Users\udoke\AppData\Roaming\Shareaza\Data\Profile.xml", GUID 575112E5FA002345809E9028D687A221.

95. Your affiant searched the Law Enforcement Online Child Protection System (CPS), which is used to identify users that possess and are sharing files on the internet. Your affiant found one file associated with GUID 575112E5FA002345809E9028D687A221. The file was "[ www.jailbaits.tv] PTHC 2012 - 11yo Katerin Enjoy Pussy Fuck (Venezuela) preteen,loli,bibcam,ptsc,new,cum,9yo,10yo.avi". CPS program showed that the file was available at 2/2/2022 17:30 UTC.

96. Your affiant was not able to locate the actual file on the media seized from ENGLAND's residence. However, your affiant did locate a (Shortcut) LNK file on the Toshiba drive in the Recent Folder showing that a file with the exact name had been in the download folder of ENGLAND's machine.

97. A (Shortcut) LNK file is a natural component of the Windows operating system and is found in many locations. Some are created by users but most are created automatically by the operating system. When a file is first opened on a system, a LNK file will be created and the modification timestamp and the creation time stamps will be the same. If the user opens the same file at a later point, the LNK is updated and hence its modification time is updated at the time last opened. Embedded in each LNK file is data related to the file being tracked be the LNK file. Forensic tools can easily parse this metadata and provide information on the type of volume the target file resides on (Fixed, Removeable, and Network), the full path, the target file's modified, access and creation timestamps, file size and other relevant data.

98. The LNK file for this file showed that the file "[ www.jailbaits.tv] PTHC 2012 - 11yo Katerin Enjoy Pussy Fuck (Venezuela) preteen,loli,bibcam,ptsc,new,cum,9yo,10yo.avi" had been located on a fixed drive (Hard Drive of the Toshiba Laptop), in the directory "C:\Users\udoke\Downloads". The file had been created on 02/02/2022 at 11:09:04 (GMT -6:00). This shows that the file would have been on the drive when it showed available on CPS.

99. Additionally, your affiant reviewed Jump List Artifacts as they relate to the aforementioned file. Jump List files are associated with various applications and located in the following directory: "C:\users\[Profile]\AppData\Roaming\Microsoft\Windows\Recent\AutomaticDestinations". Your affiant located a reference to the aforementioned file, "[ www.jailbaits.tv] PTHC 2012 - 11yo Katerin Enjoy Pussy Fuck (Venezuela) preteen,loli,bibcam,ptsc,new,cum,9yo,10yo.avi", in "4cb9c5750d51c07f.automaticDestinations-ms" which is associated with "Microsoft Movies & TV (Build 10.19031.11411.0)". The entry in the file confirms that the file, "[ www.jailbaits.tv] PTHC 2012 - 11yo Katerin Enjoy Pussy Fuck (Venezuela) preteen,loli,bibcam,ptsc,new,cum,9yo,10yo.avi", was played between the date the file, "4cb9c5750d51c07f.automaticDestinations-ms", was created 02/27/2020 19:37:54 (GMT -6:00) and last written 02/02/2022 15:11:42 (GMT -6:00).

100. In addition to the GUID locate in allocated space, your affiant located and documented a GUID (Globally Unique Identifier) from Shareaza that had been deleted but not overwritten on ENGLAND's computer. The second GUID was located in

unallocated Space, "Users\udoke\AppData\Roaming\Shareaza\Data\Profile.xml", GUID BA6CFDC1E5221F4C88A1976A23DF0165. This GUID matches one of the GUID's associated with the IP address, 72.9.124.53, associated with Todd ENGLAND's address, 1027 S. Cheney Street, Taylorville, IL (see 2021MR194) from September 28, 2021 thru the date of the return by CTI.

101. Your affiant checked CPS and located ninety-seven (97) files documented in the Law Enforcement Online Child Protection System (CPS), associated with BA6CFDC1E5221F4C88A1976A23DF0165. Of those files identified by the CPS system, eleven (11) files were located by your affiant still on the suspects media. Those matches were confirmed through hash matches with those files. It should be noted that your affiant only believes three of the eleven to be Child Abuse Material (CAM) and three of the other files to be Age Difficult.

102. Your affiant issued a summons, HSI-IO-2022-038193, to CFI Tech, Taylorville, Illinois, to determine how far back Todd ENGLAND was using the IP address 72.9.124.53. The response from the summons shows that ENGLAND had the service installed on October 15, 2019. Your affiant reviewed the CPS system and determined that between March 8, 2020, and February 2, 2022, there were fifty-six (56) unique GUID's associated with the IP address 72.9.124.53. The unique GUID for the software, Shareaza, is created at the time the software is installed.

103. Your affiant reviewed CPS for the IP address that was used by ENGLAND in the 2019 investigation, 72.9.123.248. CPS showed that between January

10, 2019, and April 1, 2019, there was only one GUID associated with the IP address and over 4000 files associated with that GUID.

104. Your affiant reviewed the media and located 16 separate downloads in Chrome for the executable install file for Shareaza. The dates of the downloads for the install file correlate with the 15 dates that new GUID's were identified on CPS for the IP address associated with ENGLAND's residence.

105. During the forensic analysis, your affiant located two prefetch files for the install file for Shareaza, "SHAREAZA_2.7.10.2_X64.EXE". The first was located in allocated space. The second was located in unallocated space. A prefetch file provides application execution data, such as the name of the executable file, the date and time for the last eight times the file was executed, and the number of times the file was executed.

106. The first prefetch file, which was located in allocated space, "Windows\Prefetch\SHAREAZA_2.7.10.2_X64.EXE-2CF5496A.pf" was created on 1/16/2022 at 12:06:57. The application path for the file is "\USERS\UDOKE\DOWNLOADS\SHAREAZA_2.7.10.2_X64.EXE". The last time the program was run was 2/2/2022 at 16:56:13. The prefetch file also tracks the number of times the install program was run from this location between the creation date, 1/16/2022, and the last run, 2/2/2022, which was 13 times. This would indicate that in the 18 days, between 1/16/2022 and 2/2/2022, the install program for Shareaza was executed 13 times to install the program.

107. Your affiant reviewed the dates associated with the last eight install executions and the dates new GUID's were identified on CPS. Your affiant found that

the eight dates correlate with 5 dates that new GUID's were identified on CPS for the IP address associated with ENGLAND's residence.

108. The second prefetch file, which was located in unallocated space, was carved out of unallocated space so it does not have the associated file name or file date attributes. However, the carved data from the file does contain the information related to the last time run, which was 12/30/2021 18:17:10, and the number of times the program was run, which was four, and the other associated run dates because it was less than eight. Those dates were: 12/30/2021 18:16:54; 12/25/2021 18:41:00; 12/25/2021 18:40:34.

109. Your affiant reviewed the dates associated with the four install executions and the dates new GUID's were identified on CPS. Your affiant found that the dates correlate with two dates that new GUID's were identified on CPS for the IP address associated with ENGLAND's residence.

110. Shareaza creates a file "Searches.dat" that contains information related to the search keyword being used and the resulting files being downloaded to the local machine based on the search keyword. The forensic software utilized by your affiant parsed out 3,326 lines of data that include the following: Search Keyword; Name of file; URL; File Size; MD5 Hash; SHA1 Hash; Artifact Type; Source (File data is coming from); Artifact Type; and Source. There are multiple lines for each file being downloaded as the lines show the URL the portion of the file is being downloaded from.

inserts a finger in the anus of the minor female. The adult male then tries to insert a dildo in the anus of the minor female and she moves away, appearing to be in pain. The adult male then again uses his finger, inserting it into the anus of the minor female. After a short time using his finger, the male again inserts the dildo into the anus of the minor female. The male is able to insert the dildo several inches into the female. The video goes back and forth between a finger and a dildo being inserted. At approximately ten minutes into the video, the minor female sits back on the couch. An adult male's penis comes into view and the minor female begins to touch the penis with her hand and then begins to perform oral sex on the adult male's penis. The oral sex continues until the male ejaculates into the minor female's mouth.

113. SA Mitchell reviewed the identified LNK files from the Toshiba Laptop Drive to determine if any of the files that were seen by SGT Nelson, Taylorville Police Department, had been on the drive when he was able to see them during his online investigation. On December 4, 2021, SGT Nelson stated that he could see a file named "Young Video Models – N28 – Nadia 14yo (60m) (youngvideo-models yvm).avi". Your affiant located the following information related to a LNK file:

| | |
|---|---|
| Record | 1871 |
| Linked Path | E:\misc\Young Video Models - N28 - Nadia 14yo (60m) (youngvideomodels yvm).avi |
| Created Date/Time - UTC-06:00 | |
| Last Modified Date/Time - UTC-06:00 | |
| Accessed Date/Time - UTC-06:00 | |
| Target File Created - UTC-06:00 | 12/4/2021 10:49:39 AM |
| Target File Last Modified - UTC-06:00 | 12/4/2021 1:16:32 PM |
| Target File Last Accessed - UTC-06:00 | 12/4/2021 12:00:00 AM |
| Target Attributes | FILE_ATTRIBUTE_ARCHIVE |
| Drive Type | DRIVE_REMOVABLE |

| | |
|---|---|
| Volume Serial Number | 805E6918 |
| Target File Size (Bytes) | 1244205056 |
| Source | Item A1-Toshiba 500 GB HDD_MQ01ABF050_Y94DTWRF T.E01 - Partition 3 (Microsoft NTFS, 464.95 GB) Windows\Users\udoke\AppData\Roaming\Microsoft\Windows\Recent\AutomaticDestinations\4cb9c5750d51c07f.automaticDestinations-ms |
| Location | File Offset 22976 |
| Evidence number | Item A1-Toshiba 500 GB HDD_MQ01ABF050_Y94DTWRF T.E01 |
| Recovery method | Carving |
| Item ID | 631733 |

114. On January 4, 2021, SGT Nelson stated that he could see a file named "(R@Ygold)(Hussyfan)(Pthc) Hc d38 Shots 9~12Yo Blond Isabel Preteen Young Russian Girl Rape Snuff.avi". SA Mitchell located the following information related to a LNK file:

| | |
|---|---|
| Record | 6480 |
| Linked Path | E:\misc\(R@Ygold)(Hussyfan)(Pthc) Hc d38 Shots 9~12Yo Blond Isabel Preteen Young Russian Girl Rape Snuff.avi |
| Created Date/Time - UTC-06:00 | |
| Last Modified Date/Time - UTC-06:00 | |
| Accessed Date/Time - UTC-06:00 | |
| Target File Created - UTC-06:00 | 1/4/2022 11:16:47 AM |
| Target File Last Modified - UTC-06:00 | 1/4/2022 11:56:16 AM |
| Target File Last Accessed - UTC-06:00 | 1/14/2022 12:00:00 AM |
| Target Attributes | FILE_ATTRIBUTE_ARCHIVE |
| Drive Type | DRIVE_REMOVABLE |
| Volume Serial Number | 805E6918 |
| Target File Size (Bytes) | 289681408 |
| Source | Item A1-Toshiba 500 GB HDD_MQ01ABF050_Y94DTWRF |

| | |
|---|---|
| | T.E01 - Partition 3 (Microsoft NTFS, 464.95 GB) Windows (Unallocated Clusters) |
| Location | Physical Sector 22254552 |
| Evidence number | Item A1-Toshiba 500 GB HDD_MQ01ABF050_Y94DTWRF T.E01 |
| Recovery method | Carving |
| Item ID | 710934 |

(NOTE: The reference to both of the aforementioned files that were seen by Sgt Nelson, were located on a removeable drive, which means that the files had to have moved from the "Download" folder to the external media.)

115. Your affiant then compared all the files identified on the Child Protective System (CPS) that had been associated with the IP address, 72.9.124.53, belonging to ENGLAND, to the LNK files from the Toshiba Laptop. Your affiant was able to locate a total of 93 matches by file name. Your affiant 42 matches with files that are identified as "Child Notable"(25); "Bestiality" (2); or "Age Difficult" (19) in CPS, and fifty-one (51) identified as "Adult Erotic" (19) or have not been classified (32). In reviewing the files, your affiant could see that the original files were located in one of the following four directories:

1) "E:\misc\"
2) "E:\misc 2\"
3) "C:\users\udoke\downloads"
4) "C:\users\udoke\videos"

116. Your affiant located two prefetch files for Shareaza.exe. A prefetch file provides application execution data, such as the name of the executable file, the last eight times the file was executed and the number of times the file was executed. The most recent prefetch file "Windows\Windows\Prefetch\SHAREAZA.EXE-

01F41A69.pf" was created on 1/1/2022 at 18:15:34, which is the first time that "\PROGRAM FILES\SHAREAZA\SHAREAZA.EXE" was run. The last time the program was run was 2/2/2022 at 16:57:44. The prefetch file also tracks the number of times "\PROGRAM FILES\SHAREAZA\SHAREAZA.EXE" was run between the creation date, 1/1/2022 and the last run 2/2/2022, which was 80 times. This indicates that in a 33-day period, "Shareaza" program was run 80 times, which is an average of 2.42 times a day.

117.   The second file your affiant located,

"$OrphanedFiles\Windows\Prefetch\SHAREAZA.EXE-01F41A69.pf", indicates that the prefetch file is located in a folder that was orphaned, meaning that the parent folder was deleted. The file was created on 8/19/2021 at 13:57:14, which is the first time that "\PROGRAM FILES\SHAREAZA\SHAREAZA.EXE" was run. The last time the program was run was 1/1/2022 at 13:57:03. The prefetch file also tracks the number of times "\PROGRAM FILES\SHAREAZA\SHAREAZA.EXE" was run between the creation date, 9/19/2021, and the last run, 1/1/2022, which was 291 times. This indicates that in a 136-day period, the "Shareaza" program was run 291 times, which is and average of 2.13 times a day.

118.   Your affiant reviewed the media for files containing suspected Child Pornography. Your affiant located images and video files that were located on the four different pieces of media belonging to ENGLAND. Your affiant sent the exported files to NCMEC to determine if the videos and images had previously been identified. Your affiant submitted the MD5 hash values of the files through the NCMEC Law

Enforcement Service Portal (LESP) to obtain a preliminary report on the aforementioned images and videos. The NCMEC portal allows for law enforcement to submit the hash values of the files to see if the files are recognized.

119. The Hash Search tool is a service of the Child Victim Identification Program (CVIP) and assists law enforcement officers and prosecutors in performing an initial assessment during child pornography investigations. Law enforcement can use the Hash Search function to compare MD5 or SHA1 hash values calculated from suspected child pornography images and videos with hash values stored in the CVIP system.

120. Once the hash values are submitted to LESP, a report is generated which categorizes submitted hashes as follows:

a) Identified Child - These exact hash values are associated with an image/video which appears to depict at least one (1) child previously identified by law enforcement. Please be advised that these hash values may be associated with apparent child pornography images/videos as well as files that do not contain apparent child pornography.

b) Recognized Hash Values - These exact hash values are associated with files previously submitted to NCMEC's Child Recognition and Identification System. However, NCMEC has no additional information regarding these files, which may or may not contain apparent child pornography or depict identified children. As a result, these hash values will not be listed in the pdf version of the NCMEC Initial Hash Value Comparison Report.

c) Unrecognized Hash Values - These exact hash values are associated with images/videos that have not yet been submitted to NCMEC's Child Recognition and Identification System.

121. Your affiant received a response form the NCMEC-LESP. The system recognized 165 of the hash files and eight of the files contained known/identified victims. The remaining 185 hash values were unrecognized.

122. One of the eight files that was recognized by NCMEC as a known victim was reviewed by your affiant and is a video that is 21 minutes and 23 seconds in length. The video was located on the external thumb drive that had been found in the garage of ENGLAND with the laptop. The video contains two minors approximately 12 to 14 years of age. The two minors are laying on a couch naked. The video transitions to the minor female performing oral sex on the minor male. The video then transitions to the minor male laying on his back and the minor female over the top of the male and they are preforming oral sex on each other. The video then transitions into several different positions of the minor male having sexual intercourse (vaginal) with the minor female. At approximately 16 minutes into the video, the minor male performs anal penetration on the minor female. There are other sexual acts that occur during the video until the minor male ejaculates on the buttocks of the minor female.

123. Your Affiant reviewed the videos described in paragraphs 112 and 122 and believes, based on his training and experience, that these videos contain child pornography as defined in 18 U.S.C. § 2256(8).

**CONCLUSION**

124. Based on the above facts and circumstances, your affiant believes that Todd ENGLAND was attempting to avoid detection from downloading child pornography, while on Federal Probation, by continually deleting and reinstalling peer-to-peer software, specifically "Shareaza". You affiant further believes that there is probable cause to believe that between November 30, 2021, and February 3, 2022, ENGLAND did possess and receive child pornography by using an electronic device that was connected to the internet.

FURTHER YOUR AFFIANT SAYETH NOT

Michael F. Mitchell
Special Agent
Department of Homeland Security
Homeland Security Investigations

Subscribed and sworn
before me this 13th day of January 2023.

s/Karen L McNaught

Karen L. McNaught
U.S. Magistrate Judge
Central District of Illinois